IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN THE MATTER OF A MEMBER | § | |
| OF THE BAR OF THE SUPREME | § | No. 10, 2021 |
| COURT OF DELAWARE: | § | |
| | § | Board Case No. 114137-B |
| BRIAN P. GLANCY, | § | |
| | § | |
| Respondent. | § | |

Submitted: January 26, 2021
Decided: February 5, 2021

Before **SEITZ**, Chief Justice; **VALIHURA** and **MONTGOMERY-REEVES**, Justices.

## <u>ORDER</u>

It appears to the Court that:

(1) This is a lawyer disciplinary proceeding. On January 8, 2021 a panel of the Board on Professional Responsibility ("the Board") filed its Report with this Court, recommending that the respondent, Brian P. Glancy, be publicly reprimanded and subject to specific conditions. Neither the Office of Disciplinary Counsel ("ODC") nor Glancy has filed any objections to the Board's report.

(2) The Court has considered the matter carefully. Glancy admitted the ethical violations alleged in the ODC's petition against him. The Board carefully considered Glancy's ethical violations, his negligent state of mind, the potential injury and actual injury, the presumptive sanction, and all of the

applicable aggravating and mitigating factors. Under the circumstances, we find the Board's recommendation of a public reprimand and the imposition of specific conditions to be appropriate. Thus, we accept the Board's findings and recommendation for discipline and incorporate the Board's findings and recommendation by reference.

NOW, THEREFORE, IT IS ORDERED that the Board's Report filed on January 8, 2021 (attached hereto) is ACCEPTED. The Office of Disciplinary Counsel shall disseminate this Order in accordance with Rule 14 of the Delaware Lawyers' Rules of Disciplinary Procedure.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice

**EFiled: Jan 08 2021 05:20PM EST**
**Filing ID 66240102**
**Case Number 10,2021**

# BOARD ON PROFESSIONAL RESPONSIBILITY
## OF THE
## SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN THE MATTER OF A MEMBER | ) | |
| OF THE BAR OF THE SUPREME | ) | **CONFIDENTIAL** |
| COURT OF THE STATE OF | ) | |
| DELAWARE: | ) | Board Case No. 114137-B |
| | ) | |
| **BRIAN P. GLANCY,** | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION OF THE BOARD
## <u>UPON THE PETITION FOR DISCIPLINE</u>

I.      PROCEDURAL BACKGROUND

Pending before a panel of the Board on Professional Responsibility (the "Board") is a Petition for Discipline filed by the Office of Disciplinary Counsel (the "ODC") on September 2, 2020, in Board Case No. 114137–B (the "Petition") against Brian P. Glancy, Esquire ("Respondent"), a member of the Bar of the Supreme Court of the State of Delaware.

The Petition alleged violations of Rules 1.15(a), 1.15(d), 8.4(c), and 8.4(d) of the Delaware Lawyers' Rules of Professional Conduct. *See* Petition ¶¶ 32-39. Respondent, through his counsel, Charles Slanina, Esquire, filed an Answer to the Petition on September 22, 2020 (the "Answer").

In accordance with a Notice of Hearing issued October 12, 2020, the Board convened a hearing (the "Hearing") by the panel on November 12, 2020.[1] The members of the panel of the Board were Theresa Ballard, Carolyn M. McNeice, and Joseph C. Schoell, Chair (the "Panel"). Patricia Bartley Schwartz, Esquire, represented the ODC. Charles Slanina, Esquire, represented Respondent.

On November 11, 2020, the ODC and Respondent submitted to the Panel a Stipulation of Admitted Facts and Violations and Joint Recommendation of Sanctions (the "Stipulation"). Appended to the Stipulation were eighteen Exhibits, which were identical to the Exhibits appended to the ODC's Petition.

At the Hearing, the Panel heard testimony from Respondent, and from Brian F. Funk, Esquire, a member of the Delaware Bar.

## II. FACTUAL FINDINGS

Since Respondent's Answer had admitted the violations alleged in the Petition, the ODC, Respondent, and the Panel treated the Hearing as relating primarily to the appropriate sanction. (Tr. 5:22-7:11 (Opening Statement of Mr. Slanina))

---

[1] In the interests of minimizing health risks associated with the COVID-19 virus, the Panel's Hearing was conducted remotely through the Zoom platform. The transcript of the Hearing was circulated to the members of the Panel on December 28, 2020. The transcript of the Hearing is cited in this Report and Recommendation as "Tr. __."

The Exhibits submitted with the Stipulation consist of:

(1)     A Certificate of Formation for Strata Law-DE, LLC, a Delaware limited liability company, dated as of October 13, 2016;

(2)     Email correspondence of Ms. Schwartz and Mr. Slanina dated February 5, 2019;

(3)     A Wells Fargo Bank, N.A. ("Wells Fargo") account statement for the Strata Law Delaware Real Estate Settlement Account (account no. ▮▮▮▮▮▮▮▮) for the period April 1 through April 30, 2017, with outstanding check detail and trial balance report;

(4)     A Wells Fargo account statement for the Strata Law Delaware Real Estate Settlement Account (account no. ▮▮▮▮▮▮▮▮) for the period October 1 through October 31, 2017, with outstanding check detail and trial balance report;

(5)     A Wells Fargo account statement for the Strata Law Delaware Real Estate Settlement Account (account no. ▮▮▮▮▮▮▮▮) for the period February 1 through February 28, 2018, with reconciliation statement;

(6)     A Wells Fargo account statement for the Strata Law Delaware Real Estate Settlement Account (account no. ▮▮▮▮▮▮▮▮) for the period August 1 through August 31, 2018;

(7)     A Wells Fargo account statement for the Strata Law Delaware Real Estate Settlement Account (account no. ▮▮▮▮▮▮▮▮) for the period September 1 through September 30, 2018;

(8)     Wells Fargo account statements for the Strata Law Delaware Rule 1.15A Attorney Trust Account (account no. ▮▮▮▮▮▮▮▮) for the period December 1, 2016 through September 30, 2017;

(9)     A Wells Fargo account statement for the Strata Law Delaware Rule 1.15A Attorney Trust Account (account no. ▮▮▮▮▮▮▮▮) for the period May 1 through May 31, 2018;

(10) A Wells Fargo account statement for the Strata Law Delaware Rule 1.15A Attorney Trust Account (account no. ▮▮▮▮▮▮) for the period June 1 through June 30, 2018;

(11) A Wells Fargo account statement for the Strata Law Delaware Rule 1.15A Attorney Trust Account (account no. ▮▮▮▮▮▮) for the period July 1 through July 31, 2018;

(12) Email correspondence of Respondent and Jenn Letzkus of Community Closing Network ("CCN") dated July 9, 2018, together with correspondence to Respondent from Bunny J. Christopher, Executive Director of the Lawyer Fund for Client Protection (the "LFCP") dated July 9, 2018;

(13) Email correspondence of Jenn Letzkus of CCN with Wendell Sammons of Wells Fargo dated July 16 and July 17, 2018;

(14) A Wells Fargo account statement for the Strata Law Delaware Rule 1.15A Attorney Trust Account (account no. ▮▮▮▮▮▮) for the period August 1 through August 31, 2018;

(15) A Wells Fargo account statement for the Strata Law Delaware Rule 1.15A Attorney Trust Account (account no. ▮▮▮▮▮▮) for the period September 1 through September 30, 2018;

(16) Three notices from Wells Fargo to the ODC dated September 12, 2018, September 20, 2018, and September 25, 2018;

(17) Internet printouts from the Louisiana Secretary of State related to certain businesses associated with Patricia L Howell, with a mailing address located in Lafayette, Louisiana; and

(18) Respondent's Certificates of Compliance, as submitted to the Delaware Supreme Court for 2017 (submitted March 1, 2017) and 2018 (submitted February 28, 2018).

The Exhibits are not disputed, have been stipulated to by the parties, and are deemed admitted into evidence by the Panel.

Based on the factual allegations of the Petition admitted by Respondent and the credible uncontroverted testimony received at the Hearing from Respondent, and the submitted exhibits, the Panel makes the factual findings which follow.

Respondent is a member of the Bar of the Supreme Court of Delaware, having been admitted in 1986. (Stipulation ¶ I (1); Tr. 10:3-5) Since his admission to the Bar, Respondent has been engaged in the practice of law, initially with the law firm of O'Donnell & Hughes and later with the firms of Schlusser & Reiver, and Hughes, Sisk & Glancy. (Tr. 10:6-11:18) Respondent started as a general practitioner, but over time his practice gravitated toward transactional work and residential real estate settlements in particular. (Tr. 11:19-12:1) In 2002, Respondent commenced employment with a Maryland-based law firm called Bouland & Brush, LLC. The Bouland & Brush firm was affiliated with Fountainhead Title Group ("Fountainhead"), and Respondent handled real estate closings for the firm in Delaware and served as its only Delaware attorney. (Tr. 12:2-13:4)

From 2008 until October 2016, Respondent was employed by and managed the Delaware office of Strata Law, LLC ("Strata Law"). Strata Law was a Delaware limited liability company owned by two Maryland attorneys who had started with Fountainhead, which had merged with a different company known as RGS Title. (Tr. 13:5-14:4) At all times relevant to the Petition, Respondent was responsible for certifying that the books and records for the Delaware office of Strata Law were in

compliance with Rule 1.15 of the Delaware Lawyers' Rules of Professional Conduct. (Stipulation ¶ I (2); Tr. 14:5-10)

The Delaware office of Strata Law maintained two accounts with Wells Fargo (together, the "Strata Law Wells Fargo Trust Accounts"): (i) the Delaware Real Estate Settlement Account (Account No. █████████████) ("Account ████"), and (ii) the Delaware Rule 1.15A Attorney Trust Account (Account No. █████████) ("Account████").[2]

In the fall of 2016, Strata Law was sold to a different Maryland-based title company called Community Closing Network (as defined above, CCN). (Tr. 14:19-15:2) In October 2016, Respondent formed Strata Law-DE, LLC ("Strata Law-DE"), as a new entity to continue his practice with the "Strata Law" name. (Stipulation ¶ I (5); Tr. 15:3-22) Respondent opened new trust accounts for Strata Law-DE with M&T Bank. Respondent did not close the Strata Law Wells Fargo Trust Accounts. (Stipulation ¶ I (7); Tr. 15:23-16:12)

As of December 31, 2016, there were at least 136 checks outstanding in Account████. The checks had been issued between February 2013 and September

---

[2] According to Respondent's Certificates of Compliance, the full title for Account ████ was "Strata Law, LLC, Rule 1.15A Attorney Trust Account/Real Estate Settlement Account." The full title for Account ████ was "Strata Law, LLC IOLTA Delaware Real Estate Settlement Account DE Rule 1.15A Attorney Trust Account." (*See* Stipulation, Exhibit 18, Item 3.1)

2016. (Stipulation ¶ I (8), Exhibit 3) The accounts had been used for a large volume of real estate settlements, and the amounts of the outstanding checks were comprised of many small sums. (Tr. 21:21-23:22)[3]

From December 2016 through September 30, 2017, Respondent continued to use Account ▆▆▆ for real estate transactions. (Stipulation ¶ I (15), Exhibit 8)

At some point in time after the closing of the original Strata Law firm, Respondent no longer received account information related to the Strata Law Wells Fargo Trust Accounts. (Tr. 17:1-11) Respondent understood that the new owners of the old Strata Law firm were safeguarding and managing the Strata Law Wells Fargo Trust Accounts. (Tr. 28:19-29:6) In early 2018, Respondent heard from one of Strata Law's founders that they intended to wind down all of the Stata Law accounts, and escheat any remaining funds to the State of Maryland. Respondent objected to any proposal to escheat property for Delaware real estate settlements under a Maryland escheat procedure. (Tr. 17:12-22)

During May 2018, a total of six unauthorized electronic transfers were made out of Account ▆▆▆. The account statement for Account ▆▆▆ identifies transfers totaling $13,217.55 out of Account ▆▆▆ to "Business to Business ACH Debit –

---

[3] Respondent explained in his testimony at the Hearing that the Strata Law firm had been handling "50, 60 plus settlements a month over many years." (Tr. 22:4-5)

Capital One Phone." All of the entries include the name "Patricia." (Stipulation ¶ I (16), Exhibit 9)

During June 2018, a total of twelve unauthorized electronic transfers were made out of Account███. This includes ten transfers totaling $17,358.28 to "Business to Business ACH Debit – Capital One Phone," and two transfers totaling $719.93 to "ATT Payment." All twelve transactions contain the name "Patricia" at the end of the entry. (Stipulation ¶ I (17), Exhibit 10)

During July 2018, ten unauthorized electronic transfers were made out of Account███. Eight transfers totaling $13,358.01 were transferred from Account ███ to "Business to Business ACH Debit – Capital One Phone." These eight transfers include the name "Patricia" at the end of the entry. Two other transfers totaling $1,260.63 were to "Lafayette Consol." These transfers included the notation "Strata LLC" in the entry. (Stipulation ¶ I (18), Exhibit 11)

On July 9, 2018, Respondent was notified by the LFCP that Strata Law-DE had been selected for audit by the LFCP. (Stipulation, Exhibit 12) Respondent forwarded the correspondence notifying him of the audit to Jenn Letzkus with CCN. Ms. Letzkus replied and informed Respondent that Account ███ had not been reconciled since September 30, 2017 (Stipulation ¶ I (19), Exhibit 12)

On July 16, 2018, Wendell Sammons, a Vice President with Wells Fargo, notified Respondent and Ms. Letzkus of unusual activity in Account███. On July

17, 2018, Ms. Letzkus responded to Mr. Sammons (copying Respondent) that the ACH transactions in Account ███ were fraudulent and the account should be frozen from ACH transactions. (Stipulation ¶ I (20), Exhibit 13) Based on his correspondence with Wells Fargo and Ms. Letzkus, Respondent understood that any unauthorized activity in connection with the accounts had been halted and that "everything was taken care of and safe." (Tr. 18:6-22)

Notwithstanding the July 17, 2020 correspondence with Wells Fargo, Account ███ was subject to further unauthorized transactions in August and September 2018. During August 2018, $100,500 was transferred from Account ███ to Account ███. Thereafter, twelve unauthorized electronic transfers totaling $22,721.63 were made from Account ███ to "Business to Business ACH Debit – Capital One Mobile." The entries for these transactions included the name "Patricia" or "Dieguez" at the end of each entry. Nine unauthorized transfers, totaling $73,976.94, were made from Account ███ to "Business to Business ACH Debit - The Beet, A Cold Sale." These two transfers included the name "Brian Glancy" at the end of the entry (Stipulation ¶ I (21), Exhibit 14)

In September 2018, six unauthorized electronic transfers were made from Account ███. The transfers totaled $9,502.58 and were to "Business to Business ACH Debit – Capital One Mobile." The six transfers include the name "Dieguez"

at the end of the entry. Three of the transfers were returned for insufficient funds (Stipulation ¶ I (22), Exhibit 15)

Respondent testified that he learned later that, after the activity in the Strata Law Wells Fargo Trust Accounts was reported as fraudulent and unauthorized in July 2018, some person called Wells Fargo pretending to be Respondent and had the accounts un-frozen. (Tr. 18:16-22)

Between September 12 and September 25, 2018, Wells Fargo sent three notices of overdrafts on Account ███ to the ODC. (Stipulation ¶¶ I (23-25), Exhibit 16)

To summarize, over the course of 2018 the Strata Law Wells Fargo Trust Accounts were subject to numerous unauthorized and fraudulent transfers during the period from May 2018 through September 2018. In all, these transactions resulted in theft in the amount of $150,854.92. (Stipulation ¶ I (33)) It is undisputed that Respondent had no knowledge of or involvement with the unauthorized electronic transfers as summarized above. (*See* Stipulation ¶¶ I (16-18, 21-22); Tr. 21:15-20)

In his testimony before the Panel, Respondent provided additional information and background related to the Strata Law Wells Fargo Trust Accounts, and what was learned concerning the unauthorized transfers from those accounts in 2018. After learning of the unauthorized transfers, Respondent was informed that there was a lengthy investigation focusing on fraud committed by an individual in

the State of Louisiana. (Tr. 18:23-21:9) Respondent understood that state or federal law enforcement authorities were involved in the investigative process, but was not contacted by such authorities. (Tr. 20:4-12) Although certain evidence submitted in this matter suggests that an individual named Patricia L. Howell of Louisiana may had some involvement with the unauthorized transfers, the Panel is unable to discern exactly how the fraudulent transfers from the Strata Law Wells Fargo Trust Accounts were accomplished or who caused or facilitated the fraudulent activity. (*See* Stipulation, Exhibits 9 & 17; Tr. 18:23-19:13)

In an effort to address and remediate the fraud committed with respect to the Strata Law Wells Fargo Trust Accounts, Respondent opened a new account with about $60,000 of his own funds. Respondent has endeavored to find payees for checks issued from the Strata Law Wells Fargo Trust Accounts, and to pay amounts due to such payees to the extent that he can locate them. As of the date of the Hearing, Respondent had paid out approximately $35,000.00 to payees that he was able to identify and locate. (Tr. 23:23-24:17) As of the date of the Hearing, Respondent indicated that he expected to get through the backlog of payees for the Strata Law Wells Fargo Trust Accounts in about four months, and to pay those who could be located with reasonable effort. (Tr. 36:6-37:21) The remediation efforts undertaken by Respondent have not been assisted with any funds recovered from

those committing the fraud from the accounts. Nor has Respondent been assisted by the former principals of Strata Law or Wells Fargo. (Tr. 19:14-20:3; 21:10-14)

Respondent's Certificates of Compliance, submitted pursuant to Rule of Professional Conduct 1.15 for the years 2017 and 2018, contained misrepresentations concerning the status of Strata Law's books and records. Respondent answered "YES" when he should have answered "NO" to items 2.5, 2.6, 2.9 and 2.12.[4] The Stipulation and Respondent's Answer concede the misrepresentations. (Stipulation ¶ I (31); Answer ¶ 31) Respondent testified that he included the Strata Law accounts on his Certificates of Compliance without giving a great deal of thought to the matter, and that he understood the accounts remained his responsibility but thought they were being properly maintained. (Tr. 27:20-

---

[4] On the Certificates of Compliance, Question 2.5 states: "Other than the minimum amount of non-fiduciary funds allowable (no more than $2000 to cover bank service charges), only funds held in a fiduciary capacity are held in any attorney trust/escrow account. Other funds, including earned fees, are not commingled with escrow funds." Question 2.6 states: "Check register balances for all bank accounts are reconciled monthly to bank statement balances." Question 2.9 states: "With respect to attorney trust/escrow account(s), the reconciled end-of-month cash balance agrees with the total of the client balance listing of the client subsidiary ledger." Question 2.12 states: "With respect to attorney trust/escrow account(s), for those fiduciary funds which should be disbursed and for which checks have been issued in an attempt to disburse funds, all checks have cleared within six months from the date of issuance OR for each check which has not cleared within six months, steps are promptly being taken to contact the payees to determine the reason the checks were not deposited, and replacement checks are being issued, as necessary or appropriate; with regard to abandoned or unclaimed trust funds, these account(s) comply with Supreme Court Rule 72." (Stipulation, Exhibit 18)

28:12) Respondent acknowledged that he should have been attending to the accounts to resolve any unpaid checks. (Tr. 28:12-14)

Respondent was the subject of discipline for similar conduct to the conduct at issue in this matter in 2006. (Stipulation ¶ II (3)) On November 1, 2006, the ODC issued a private admonition to Respondent related to the books and records of the firm of Bouland & Brush. The private admonition related to the failure to timely reconcile accounts of Bouland & Brush and resulting overdrafts on the escrow account for which Respondent was responsible while he was employed with Bouland & Brush. (Tr. 24:22-26:20)

During his testimony before the Panel, Respondent expressed remorse over the problems with the Strata Law Wells Fargo Trust Accounts and related matters. He testified that the experience was personally embarrassing and mortifying. (Tr. 26:21-28:14) He also took responsibility his actions. (Tr. 28:15-29:8)

Following the conclusion of Respondent's testimony, the Panel heard testimony from Brian F. Funk, Esquire. Mr. Funk is a member of the Bar of the Supreme Court of the State of Delaware. (Tr. 40:7-11) Mr. Funk testified that he knows Respondent professionally, and Respondent has an excellent reputation among members of the Bar who practice the area of real estate, and among other real estate professionals. (Tr. 42:17-43:22) Mr. Funk also testified that Respondent has

helped him with complex real estate issues for the benefit of his clients. (Tr. 41:19-42:16)

## III.  STANDARD OF PROOF

Allegations of professional misconduct must be established by the ODC by clear and convincing evidence.  Delaware Lawyers' Rules of Disciplinary Procedure, Rule 15(c).  Based upon Respondent's admission of the material elements of the violations in both his Answer and the Stipulation, the Panel finds that the ODC has satisfied its burden.

## IV.  FINDINGS ON VIOLATIONS OF THE RULES

COUNT ONE:  RESPONDENT FAILED TO SAFEGUARD CLIENT FUNDS IN VIOLATION OF RULE 1.15(a)

Rule 1.15(a) requires that a lawyer holding the property of clients or third persons shall identify and appropriately safeguard such property.  By failing to safeguard client funds in Account████ and Account████, Respondent exposed funds in these accounts to theft of $150,854.92 in violation of Rule 1.15(a). (Stipulation ¶¶ I (32-33))

COUNT TWO:  RESPONDENT FAILED TO MAINTAIN BOOKS AND RECORDS IN VIOLATION OF RULE 1.15(d)

Rule 1.15(d) sets forth detailed and specific requirements for the maintenance of attorneys' books and records and handling of practice-related funds.  Respondent failed to properly maintain his books and records in violation of Rule 1.15(d) in that:

(1) Respondent failed to prepare monthly bank reconciliations for Account████; (2) Respondent failed to take steps to identify and contact the payees of more than 130 outstanding checks for Account ████; (3) Respondent failed to comply with the requirements of Supreme Court Rule 73 with respect to abandoned or unclaimed trust funds for Account ████; and (4) Respondent failed to promptly transfer earned legal fees out of Account ████.  (Stipulation ¶ I (34-35))

COUNT THREE:   RESPONDENT ENGAGED IN CONDUCT INVOLVING
                         MISREPRESENTATION IN VIOLATION OF RULE 8.4(c)

Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."  By filing with the Delaware Supreme Court in 2017 and 2018 Certificates of Compliance which included inaccurate representations relating to the maintenance of Strata Law's books and records, Respondent engaged in conduct involving misrepresentation in violation of Rule 8.4(c).  (Stipulation ¶¶ I (36-37))

COUNT FOUR:   RESPONDENT ENGAGED IN CONDUCT PREJUDICIAL
                       TO THE ADMINISTRATION OF JUSTICE IN VIOLATION
                       OF RULE 8.4(d)

Rule 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."  The Delaware Supreme Court relies upon the representations made by attorneys in the Certificates of Compliance filed each year in the administration of justice governing the practice

of law in Delaware. By filing with the Delaware Supreme Court in 2017 and 2018 Certificates of Compliance which included inaccurate representations relating to the maintenance of Strata Law's books and records, Respondent violated Rule 8.4(d). (Stipulation ¶¶ I (38-39))

## V.  RECOMMENDED SANCTION

In their Stipulation, the ODC and Respondent submitted a Joint Recommendation of Sanction, consisting of (1) a public reprimand, (2) a condition requiring that, if Respondent serves as a Managing Partner in charge of books and records of a firm, then for a period of two years, Respondent shall with his Certificate of Compliance submit an affidavit of a licensed certified public accountant, certifying that such firm's law practice books, records, and accounts have been maintained in compliance with Rule 1.15 and all payroll tax obligations of such firm have been satisfied, and (3) Respondent's prompt payment of costs of this proceeding.  (Stipulation § III)

The Panel agrees with the Joint Recommendation of Sanction.  In addition, the Panel proposes an additional condition, as part of the sanction:  that Respondent periodically report to the ODC on his efforts to contact payees of any outstanding checks issued on the Strata Law Wells Fargo Trust Accounts, with such frequency and in such detail as the ODC shall direct, and that Respondent continue to make

good faith, reasonable efforts to expeditiously resolve any issues related to such outstanding checks to the extent necessary to resolve such issues.

## VI. RATIONALE FOR THE RECOMMENDED SANCTION

In making its recommendation, the Panel utilized the four-part framework set forth in the ABA Standards for Imposing Lawyer Sanctions (1991 as amended February 1992) ("ABA Standards"). To promote consistency and predictability in the imposition of disciplinary sanctions, the Delaware Supreme Court looks to the ABA Standards. *In re Doughty*, 832 A.2d 724, 735-736 (Del. 2003) (citations omitted). The ABA Standards' framework considers: (1) the ethical duty violated; (2) the lawyer's state of mind; (3) the actual or potential injury caused by the lawyer's misconduct; and (4) aggravating and mitigating factors. *Id.*; *accord In re Goldstein*, 990 A.2d 404, 408 (Del. 2010).

### 1. The Ethical Duties Violated

The ODC alleged, Respondent admitted, and the Panel determines that Respondent committed misconduct in violation of Rules of Professional Conduct 1.15(a) (failing to safeguard client funds); 1.15(d) (failing to properly maintain financial books and records); 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); and 8.4(d) (engaging in conduct that is prejudicial to the administration of justice governing the practice of law in Delaware). Under the ABA Standards, this misconduct constituted violations of

duties owed by Respondent to clients (Rules 1.15(a) and (d)), and violations of duties owed by Respondent to the legal system (Rules 8.4 (c) and (d)). *See* ABA Standards 4.0 and 6.0.

2.    State of Mind

The Panel finds that Respondent's conduct was negligent, which is defined in the ABA Standards as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." ABA Standards § III (DEFINITIONS).

With respect to Respondent's violations of Rule 1.15, the ODC alleges, and Respondent admits, negligent conduct. (*See* Stipulation ¶ I (32)) The Panel concurs and finds that Respondent's conduct was negligent with respect to Respondent's failure to maintain books and records as required by Rule 1.15.

As it relates to Respondent's violations of Rule 8.4, the issue of Respondent's state of mind is a closer question. Respondent's conduct in submitting Certificates of Compliance in 2017 and 2018 that included misrepresentations comes close to amounting to "knowing" violation of the Rules. *See In re Stull*, 2009 WL 4573243, at *1, *6 (Del. Dec. 4, 2009) (disposition reported at 985 A.2d 391 (Table)) (approving Board determination of that attorney acted with "knowledge" when attorney took "head in the sand" approach, despite being consciously aware of

obligations to manage law office and accurately complete Certificates of Compliance).  Here, the Panel concludes that Respondent's conduct with respect to the Certificates of Compliance meets the standard of negligence.  The Panel bases its findings on Respondent's testimony that in submitting his Certificates of Compliance for 2017 and 2018, (1) he did not focus on the inclusion of the old Strata Law accounts in addition to the new accounts he established for Strata Law-DE (Tr. 27:20-28:12), and (2) although he had not been involved with the Strata Law Wells Fargo Trust Accounts during much of 2017 or for any part of 2018, he believed that the accounts were being properly maintained and protected by the former principals of Strata Law and the funds in the accounts were not at risk.  (Tr. 28:19-29:6)

In reaching its conclusion that Respondent's submission of the Certificates of Compliance amounted to negligent as opposed to knowing conduct, the Panel considered precedents in which comparable violations of Rule 8.4 with respect to the submission of Certificates of Compliance to the Delaware Supreme Court have been found to constitute negligent action by the sanctioned attorney.  *See In re Dillon*, 2017 WL 6506620, at *1, *7 (Del. Dec. 14, 2017) (disposition reported at 176 A.3d 716 (Table)) (adopting Board recommendation that respondent acted negligently in connection with submission of Certificates of Compliance that included misrepresentations); *In re Castro*, 2017 WL 1376411, at *1, *6 (Del. Apr. 12, 2017) (disposition reported at 160 A.3d 1134 (Table)) (same); *In re Gray*, 2016

WL 7188110, at * 5, *7 (Del. Dec. 9, 2016) (disposition reported at (52 A.3d 581 (Table)) (noting that ODC and respondent agreed that appropriate mental state was negligence in case involving misstatements in Certificate of Compliance); *In re Woods*, 143 A.3d 1223, 1232 (Del. 2016) (panel finding that the ODC failed to establish a state of mind more culpable than negligence in connection with submission of Certificates of Compliance that included misrepresentations).

### 3. Actual or Potential Injury

In this case, there was an "injury" in connection with the Strata Law Wells Fargo Trust Accounts, in that fraudsters made off with over $150,000 that remained in these accounts as of 2018. Respondent's conduct did not cause this fraud. However, Respondent's lack of diligence in causing the Strata Law Wells Fargo Trust Accounts to be expeditiously wound down after Strata Law's closure in 2016 (along with a similar lack of diligence by Strata Law's principals) left funds in the accounts exposed. While the fraud amounts to an injury, the Panel notes that there was no evidence of a substantial injury to any client of Strata Law, and that any injury to the payees on outstanding checks is difficult to ascertain. The testimony at the Hearing established that such payees were owed relatively modest amounts of money, and for a variety of reasons did not cash checks that were issued to them from the Strata Law Wells Fargo Trust Accounts years prior to the firm's closure. (Tr. 22:12-23:10) Further, there is no evidence that any party complained about not

having received any payment that should have been made from the Strata Law Wells Fargo Trust Accounts. (Tr. 37:22-38:10 (Respondent testifying that he received no calls or inquiries concerning outstanding checks in the accounts)) It was likely that substantial funds in the Strata Law Wells Fargo Trust Accounts may have been escheated to the State due to inability to locate payees after reasonable effort. Those payees that can be located with reasonable effort are now being paid by Respondent out of personal funds.

4.      Presumptive Sanction

In the Panel's view, analysis of the ethical duties violated by Respondent, Respondent's state of mind and the potential for injury caused by Respondent's misconduct raise a presumptive sanction of public reprimand. The ethical duties violated direct the Panel to the following factors contained in the ABA Standards: 4.1 (for violations of Rule 1.15(a) and (d)), and 6.1 (for violations of Rule 8.4(c) and (d)). Where, as in this matter, the conduct involves negligent acts with injury or potential injury, these provisions point generally to a public reprimand as an appropriate sanction. *See* ABA Standards 4.13, 4.63, 6.13 and 7.3. The presumptive sanction must then factor in the presence or absence of any mitigating or aggravating factors.

5.      Aggravating and Mitigating Factors

(a)     Aggravating Factors

ABA Standard 9.22 sets forth the following non-exhaustive list of aggravating factors:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) Submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution;

(k) illegal conduct, including that involving the use of controlled substances.

ABA Standard 9.22.

The ODC and Respondent have stipulated that the following aggravating factors are applicable in this case:

(1)     Respondent has substantial experience in the practice of law, having practiced continuously since his admission to the Delaware Bar in 1986. ABA Standard 9.22(i).[5]

(2)     Respondent has engaged a pattern of violating the Delaware Lawyers' Rules of Professional Conduct over an extended period of time, involving the Strata Law books and records and Respondent's Certificates of Compliance obligations. ABA Standard 9.22(c).

(3)     Respondent has prior discipline for the same or similar conduct, which resulted in the issuance of a private admonition.  ABA Standard 9.22(a).

The Panel finds, based on the evidence summarized above, that the foregoing aggravating factors are applicable to consideration of the sanction in this proceeding.

(b)     Mitigating Factors

ABA Standard 9.32 sets forth the following non-exhaustive list of factors to be considered in mitigation:

(a) absence of a prior disciplinary record;

---

[5]  The Stipulation erroneously states Respondent's date of admission in Section II as 1981.  (Stipulation § II, Aggravating Factors ¶ 1)  However, Respondent was admitted to the Delaware Bar in 1986.  (Stipulation ¶ I (1); Tr. 10:3-5)

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when: (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely;

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse;

(m) remoteness of prior offenses.

ABA Standard 9.32.

The ODC and Respondent have stipulated that the following mitigating factors are applicable in this case:

(1) Respondent did not have a dishonest of selfish motive. ABA Standard 9.32(b).

(2) Respondent had personal or emotional problems involving the loss of employment by his former firm, and the lack of cooperation from his former firm in managing the accounts. ABA Standard 9.32(c).

(3) Respondent made a timely and good faith effort to make restitution and to rectify the consequences of his misconduct, including by using his own time and funds to make disbursements to payees on behalf of his former firm where such payees can be located. ABA Standard 9.32(d).

(4) Respondent made a full and free disclosure to the ODC and was cooperative toward the proceedings. ABA Standard 9.32(e).

(5) Respondent has good character and reputation in the Delaware Bar. ABA Standard 9.32(g).

(6) Respondent has suffered other penalties and sanctions, in particular through use of his own time and funds to disburse escrow funds without cooperation or contribution from his former firm. ABA Standard 9.32(k).

(7)     Respondent has demonstrated genuine remorse for his misconduct. ABA Standard 9.32(l).

(8)     Respondent's prior disciplinary offense is remote in time, having occurred in 2005 and 2006.  ABA Standard 9.32(m).

The Panel finds, based on the evidence summarized above, that the foregoing mitigating factors are applicable to consideration of the sanction in this proceeding.

6.     Precedent

The Panel believes that recommending a public reprimand in this matter is consistent with Delaware Supreme Court precedent. "[T]he objectives of any lawyer sanction should be to protect the public, to advance the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct." *In re Doughty*, 832 A.2d at 735-736 (citations omitted).

The sanction of a public reprimand and the related condition as proposed by the ODC and Respondent is consistent with precedent in other cases involving disciplinary proceedings under Rule 1.15 and Rule 8.4.  *See In re Benson*, 774 A.2d 258, 262-263 (Del. 2001) (issuing public reprimand with probation and conditions for record-keeping violations and submission of inaccurate Certificates of Compliance); *In re Dillon*, 2017 WL 6506620, at *1 (approving public reprimand and two-year probation with conditions as proposed by panel); *In re Castro*, 2017 WL 1376411, at *1 (same); *In re Gray*, 2016 WL 7188110, at * 1 (approving public

reprimand and two-year probation); *In re Woods*, 143 A.3d at 1226 (approving recommendation of public reprimand for violations of Rules 1.15 and 8.4).

VII. CONCLUSION

Based upon the facts and related issues stipulated to by the ODC and Respondent, the evidence presented at the Hearing, and the considerations summarized above, the Panel recommends as the action of the Board that Respondent be sanctioned as follows:

1. Public Reprimand. That Respondent be publicly reprimanded for his violation of Rule 1.15(a), Rule 1.15(d), Rule 8.4(c) and Rule 8.4(d) of the Delaware Lawyers' Rules of Professional Conduct.

2. Condition No. 1. That, if Respondent is going to be Managing Partner in charge of books and records of a firm. Respondent shall notify the ODC immediately, and thereafter shall submit to the ODC, with his Certificate of Compliance on the first day of March after becoming Managing Partner, an affidavit by a licensed certified public accountant certifying that all of the firm's law practice books, records and bank accounts have been maintained during the preceding year in full compliance with Rule 1.15, and that the firm's payroll tax obligations for the preceding year have been satisfied in compliance with applicable law. Respondent shall provide the above-referenced affidavit for the immediate two years after becoming Managing Partner.

3. Condition No. 2. That Respondent be required to report periodically to the ODC (with the frequency and content of reports to be determined by the ODC) on his efforts to locate and pay payees of outstanding checks issued on the Strata Law Wells Fargo Trust Accounts, and to provide such information as the ODC may request, until the ODC determines that all reasonable efforts resolve any open issues related to the accounts have been exhausted.

4.     Costs.  That Respondent be directed to pay the cost of this proceeding. Pursuant to Rule 27 of Rules of Disciplinary Procedure, Respondent shall pay the ODC's costs promptly upon the presentation of a statement of costs by the ODC.  Respondent shall also pay the costs of the audit performed by the auditor for LFCP, promptly upon presentation of a statement of such costs.

Respectfully submitted,


/s/ *Joseph C. Schoell*
Joseph C. Schoell, Chair

Date: January 8, 2021


/s/ *Carolyn M. McNeice*
Carolyn M. McNeice

Date: January 8, 2021


/s/ *Theresa Ballard*
Theresa Ballard

Date: January 8, 2021


ACTIVE.125500546.02